## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                No. 1:20-cr-00186

        v.                          Hon. HALA Y. JARBOU
                                        United States District Judge

JAQUARI TROTTER and
GREGORY ROGERS,

                Defendants.

_____/

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO PRECLUDE EVIDENCE PURSUANT TO FRE 404(b)

In February 2020, Defendant Jaquari Trotter used a firearm to shoot nearly a dozen times at a law enforcement officer who was doing his job. Trotter was aided in that assault by Defendant Gregory Rogers, who drove Trotter to the scene of the shooting and then helped Trotter flee the crime scene after he had committed the assault. At trial, the United States intends to introduce evidence of Trotter's other encounters with the police, during which he was, as he was here, traveling in a vehicle armed with a 9mm handgun. This evidence demonstrates Trotter's modus operandi and helps establish his identity in this case.

At trial, the United States also intends to introduce electronic evidence taken from Trotter's phones and Facebook account showing Trotter in possession of and actually shooting handguns similar to the one used in the shooting. Again, this evidence is intended to identify Trotter as the shooter and to demonstrate that he had the opportunity and intent to commit the crimes of which he stands accused. Finally,

1

the United States intends to introduce evidence of Trotter wearing clothing matching the description of the shooter within days of the shooting itself, again to establish identity.[1] Nevertheless, Trotter has now moved this Court to exclude this relevant, probative evidence. (R.46: Def. Mtn. to Preclude 404(b) Evid., PageID.89.; R.50: Second Def. Mtn. to Preclude 404(b) Evid., PageID.154.) For the reasons outlined herein, Trotter's motions should be denied.

## BACKGROUND

### A.  Crimes Charged in the Indictment

In the early afternoon of February 4, 2020, defendants Trotter and Rogers were hanging out, smoking marijuana, and spending time with their friends in the driveway of the residence located at 941 Sherman Street SE ("941 Sherman") in Grand Rapids. Around the same time, Federal Task Force Officer ("TFO") Daren Ferden was working as a member of the US Marshals Task Force in the area of Baxter and Fuller Streets SE in Grand Rapids, as part of a fugitive investigation. While conducting surveillance in his vehicle, TFO Ferden observed a black male wearing gray sweatpants and a tan Carhartt-type jacket walk past him on the street. TFO identified the man as someone whom he believed to be a fugitive, but he did not have sufficient time to follow up on that belief, as members of the task force were actively searching for another fugitive at that time. However, later that day, TFO Ferden

---

[1] Trotter's Second Motion to Preclude 404(b) Evidence also seeks to preclude the United States from offering evidence "linking Mr. Trotter to a blue Chevy Cruze on dates other than those in the indictment." (R.50: Second Def. Mtn. to Preclude 404(b) Evid., PageID.156.) However, as acknowledged in Trotter's Errata Notice, the government's evidence about the Chevy Cruze related only to co-defendant Rogers, not Trotter. (R.48: Errata, PageID.147.) Therefore, Trotter does not have standing to contest this evidence, and it is not addressed substantively herein.

returned to the area of 941 Sherman in an attempt to locate the man in the tan Carhartt jacket.

Upon returning to the area, TFO Ferden drove by 941 Sherman in his unmarked law enforcement vehicle, a Ford Edge. When he drove by, TFO Ferden saw a blue car backed into the driveway of 941 Sherman. TFO Ferden also saw an unidentified individual standing at the front passenger window of the blue car. TFO Ferden then turned around on Sherman Street, east of 941 Sherman, and started to drive back by the residence at 941 in an effort to identify whether the man with the Carhartt jacket was outside.

As TFO Ferden was approaching 941 Sherman in his vehicle, however, the blue car pulled out directly in front of him. TFO Ferden then followed the car in an effort to get a license plate number. Before he could do so, though, the blue car quickly turned north on Dolbee St. SE. TFO Ferden also turned north on Dolbee St. SE, from Sherman St. SE. When TFO Ferden turned to follow the blue car, it suddenly pulled over onto the right side of Dolbee. TFO Ferden then observed a black male exit the passenger side of the blue car. TFO noted that the man was wearing a tan/brown Carhartt-style jacket. TFO Ferden then observed the male remove a handgun from his waist area and begin firing multiple rounds at the passenger side of his (TFO Ferden's) vehicle. TFO Ferden ducked down and drove to the north, attempting to avoid the gunfire.

Shortly thereafter, TFO Ferden met up with other law enforcement officers from the Grand Rapids Police Department ("GRPD"), who checked TFO Ferden for

3

injuries. TFO Ferden was not injured by the gunfire. However, there was significant damage to the passenger side of his unmarked law enforcement vehicle. TFO Ferden's vehicle was later processed by GRPD evidence technicians who concluded that the vehicle was struck by gunfire. Additionally, law enforcement recovered multiple 9mm casings from the scene of the shooting on Dolbee St. SE.

Almost immediately after the shooting, GRPD law enforcement officers secured the area and began investigating. As part of the investigation, GRPD identified the blue car as a blue Chevy Cruze that belonged to Rogers's girlfriend. Officers also learned that seven individuals had been either inside or in the driveway of 941 Sherman immediately prior to the shooting. Investigators ultimately located and interviewed all of those individuals except Rogers, who declined to speak with law enforcement. Through these interviews, officers learned that, at the time that the shooting itself took place, five of the seven individuals had been inside the residence at 941 Sherman and that only Trotter and Rogers had not. Witnesses confirmed that, in fact, right before the shooting, Trotter and Rogers had left the residence in the Chevy Cruze, with Rogers driving and Trotter in the passenger seat.

Witnesses also recounted the events that took place in the hours leading up to the shooting. Specifically, they stated that they were hanging out in the driveway at 941 Sherman when Rogers arrived in the blue Chevy Cruze. Sometime later, Trotter also arrived (on foot) wearing a tan Carhartt-type jacket. When he arrived, Trotter had a handgun in his possession. The group then proceeded to smoke marijuana, listen to music, and generally hang out. It was during this time that several of them

saw TFO Ferden driving by in his unmarked vehicle and identified him as a police officer based upon the computer in his vehicle and other factors.

Investigators confirmed these statements by reviewing surveillance footage from a neighboring Ring camera, which showed Trotter, wearing a tan Carhartt-type jacket, walking into the front yard of 941 Sherman shortly before the shooting. The video footage also showed the blue Chevy Cruze backed into the driveway and Rogers, dressed in all black, walking back and forth between the car and the front yard of the residence.

Investigators ultimately located and impounded the blue Cruze, which they found at Rogers's grandmother's residence on the evening of February 4, 2020. GRPD forensic examiners recovered Trotter's fingerprints on the exterior of the blue Cruze's passenger door and Rogers's fingerprints on the exterior of the driver's door. Examiners also located Rogers's DNA on the steering wheel of the Cruze.

Investigators later interviewed Trotter about the events of February 4, 2020. Trotter made a number of self-serving statements to law enforcement, including telling them that he had never seen Rogers with a gun, nor was he (Trotter) the "type of guy to be around guns" given his previous gun-related conviction. He also made other claims about his whereabouts all day on February 4, 2020, which law enforcement subsequently disproved as part of their investigation.

Finally, in addition to talking to witnesses, reviewing relevant video recordings, and conducting forensic analyses, investigators also gathered and analyzed extensive electronic evidence in this matter, including cell phones belonging

to both Trotter and Rogers as well as multiple Facebook accounts, including one belonging to Trotter. On one of the witnesses' Facebook accounts, investigators located a video taken in the driveway of 941 Sherman approximately one hour before the shooting that showed a witness in possession of a silver and black handgun. *See* Ex. 1. This appears to be the handgun that Trotter brought to 941 Sherman on February 4, 2020 and subsequently used to shoot at TFO Ferden.

In Trotter's own Facebook account, investigators located multiple photographs of similar handguns as well as at least one video of Trotter holding such a handgun with his finger next to the trigger while aiming the gun at the camera. Trotter's phones also included relevant evidence related to Trotter's possession and use of handguns. Specifically, on the phone seized from Trotter in November 2020 (see facts below), investigators located numerous photographs and videos of silver and black handguns similar to the one believed to have been used in the shooting in February 2020. The phone also contains videos of Trotter engaging in target practice with handguns similar to that used in the shooting.

Finally, Trotter's Facebook account included videos of Trotter wearing a black hoodie and a tan Carhartt-type jacket nearly identical to the one TFO Ferden described the shooter as wearing on the day of the shooting. The date stamps of the relevant items indicate that Trotter uploaded the videos to his account within weeks of the shooting itself, thus further establishing the identity of Trotter as the shooter.

B. <u>Trotter's Previous Conviction for Carrying a Concealed Weapon</u>

February 4, 2020 was not the first or the last time that law enforcement encountered Trotter in a vehicle with a 9mm handgun. In 2017, officers responded to Butterworth Hospital after being informed that a shooting victim had just been brought into the emergency room. Once on scene, officers ultimately searched the vehicle that had been used to transport the victim and discovered a stolen 9mm handgun in the glove compartment. Subsequent investigation revealed that Trotter had been sitting in the passenger seat of the vehicle when the victim (his brother) was brought in. In fact, Trotter later admitted that his fingerprints would be found on the gun and that, though the gun was not his, he and his brother did pass the gun back and forth. These events ultimately led to Trotter pleading guilty in 2018 in Kent County Circuit Court to one count of carrying a concealed weapon.

C. <u>Trotter's Possession of a Loaded 9mm Handgun in November 2020</u>

Trotter also illegally possessed a 9mm handgun in November 2020. Specifically, on November 16, 2020, a known and reliable informant[2] called a GRPD detective to provide information that three black males were in possession of guns and drugs while riding in a black SUV with a California license plate. The informant also told the detective that the SUV was in the area of Goodrich and Commerce Streets SW in Grand Rapids. When the detective could not respond immediately, the

---

2 The informant had provided reliable information to the detective in the past. He/she had also participated in controlled buys with the detective. The informant, who continues to work for GRPD, is not working for leniency on any pending criminal case but is being financially compensated for his/her information.

informant relayed that same information to law enforcement via a 911 call, with dispatch ultimately passing the information, including that the tip came from a known and reliable informant, along to on-duty officers who then responded to the area. The officers ultimately found a black Nissan SUV parked on McConnell Street near Ionia Avenue SW, within blocks of the location provided by the informant. The SUV bore California plates, which came back as a rental upon later investigation.

After corroborating several of the details provided by the tipster, officers detained the parked vehicle. Inside, they found Trotter sitting in the back passenger seat. When ordered to by law enforcement, Trotter got out of the SUV through the back seat, driver's side door, which he then left open. Officers took Trotter into custody at that time. Officers then asked Trotter if he had any weapons or anything dangerous on his person, to which Trotter responded that he had scissors in his pocket. Officers searched Trotter and ended up finding his cell phone on him but did not find any scissors.

Officers then approached the SUV. Through the still open back passenger door, they could see the butt of a handgun under the driver's seat of the vehicle. The gun appeared to the officers to be positioned in such a way that it was only accessible by someone sitting in the rear of the vehicle. Also in the car, officers found suspected crack cocaine and marijuana in the driver's side door and a digital scale in the center console. Officers recovered the gun, which was loaded with a round in the chamber. Investigators later determined that the gun was a Smith and Wesson, model SW9VE, 9mm pistol. Forensic analysis of the gun later revealed Trotter's DNA on the gun.

D.  <u>Trotter's Motions to Preclude</u>

All of these events ultimately led to Trotter being charged in this case with assault on a federal law enforcement officer, in violation of 18 U.S.C. §§ 111(a), 111(b), and 2; discharge of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2; and being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). (R.1: Indictment, PageID.1.) Count Three of the Indictment specifically charges Trotter with being a convicted felon in possession of 11 rounds of 9mm ammunition. (*Id.*)

In preparation for trial, the United States provided notice to Trotter and his counsel of its intent to use certain evidence pursuant to Rule 404(b) of the Federal Rules of Evidence (FRE). Specifically, the United States indicated that it may seek to introduce the following:

1) Trotter's 2018 case for carrying a concealed weapon;

2) Facts related to Trotter's pending State of Michigan case; and

3) Evidence of firearm possession on dates other than that charged in the indictment.

In the same disclosure, the United States also informed Trotter and his counsel that it may seek to introduce evidence of Trotter wearing clothing similar in description to the clothes worn by the shooter on dates other than those in the Indictment but indicated that it considered such evidence direct evidence against Trotter and thus not governed by FRE 404(b). Trotter is now asking the Court to preclude the admission of all of this evidence, arguing that it is irrelevant and unfairly prejudicial.

(R.46: Mtn. to Preclude 404(b) Evid., PageID.89; R.50: Second Def. Mtn. to Preclude 404(b) Evid., PageID.154.) For the reasons outlined herein, such arguments fail, as the proposed testimony and exhibits are offered either as direct evidence of Trotter's guilt or otherwise for proper purposes under a rule designed to be inclusive rather than exclusive of such probative evidence. Trotter's motions should be denied.

## LAW & ARGUMENT

Rule 404(b) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, [and] identity . . . ." The rule is "a rule of inclusion rather than exclusion." *United States v. Carney*, 387 F.3d 436, 450 n.11 (6th Cir. 2004) (quoting *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985)).

Application of Rule 404(b) involves a three-step process. The district court must: (1) make a preliminary finding as to whether sufficient evidence exists that the prior act occurred; (2) determine whether the other act is admissible for one of the proper purposes outlined in Rule 404(b); and (3) apply Rule 403 balancing to determine whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice or the other concerns embodied in Rule 403. *United States v. Allen*, 619 F.3d 518, 523 (6th Cir. 2010) (citing *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001)). "Evidence of other acts is probative of a material issue other than character if (1) the evidence is offered for a legitimate purpose, (2) the purpose for

which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *United States v. Burnette*, 21 F. App'x 382, 386 (6th Cir. 2001) (unpublished) (citing *United States v. Johnson,* 27 F.3d 1186, 1190–93 (6th Cir. 1994)). Put another way, "[p]rior bad act evidence is probative if it is sufficiently similar to the charged crimes to establish the defendant's pattern, modus operandi, or 'signature.'" *Mack*, 729 F.3d at 602.

Here, all of the proposed 404(b) evidence is probative and should be admitted. Specifically, the United States intends to use it in part to establish Trotter's identity, his intent, and his opportunity to commit the crimes of which he currently stands accused. The evidence also demonstrates Trotter's pattern and his modus operandi – he travels as a passenger in vehicles while carrying a loaded 9mm handgun. For all of these reasons, the evidence should be admitted at the trial of this matter.

A. <u>Trotter's Previous Conviction for Carrying a Concealed Weapon</u>

Trotter's 2018 conviction for carrying a concealed weapon is relevant and should be admitted. Specifically, the conviction demonstrates Trotter's modus operandi, and it is also probative of his identity as the shooter here. Applying the three-step analysis outlined in *Allen* supports the admission of the evidence.

First, there is clearly sufficient evidence that Trotter illegally possessed a 9mm handgun in 2017. He pled guilty to carrying a concealed weapon and was adjudged guilty and sentenced as such. *See United States v. Chesney*, 86 F.3d 564, 569 (6th Cir. 1996) (holding that there was sufficient evidence the prior robbery occurred since the

defendant pled guilty to state robbery charges before his subsequent felon in possession trial began).

Second, the United States intends to introduce Trotter's prior possession of a 9mm handgun for proper purposes under Rule 404(b) – namely, his modus operandi, which is evidence of his identity. The fact is, Trotter has an established way of doing something – he rides around in a car armed with a 9mm handgun. Sometimes, as here, he has used that handgun; others, he does not. Still, his pattern of possessing a loaded 9mm handgun is the same and is probative evidence of his identity here.

Finally, turning to the analysis under Rule 403, the probative value is not substantially outweighed by a danger of unfair prejudice. To the extent that there is a risk of unfair prejudice based on admission of the evidence, it can be minimized with a limiting instruction. *Chesney*, 86 F.3d 564, 573 (6th Cir. 1996) ("The district court also gave a limiting instruction, cautioning the jury that it could use the evidence of Chesney's other acts only to determine whether he knowingly possessed the firearm on June 10."); *see also Mack*, 258 F.3d at 555.

Nevertheless, in his motion, Trotter argues that the facts related to his 2018 firearms conviction are too dissimilar to the facts of this case to be properly admitted. (R.46: Def. Mtn. to Preclude 404(b) Evid., PageID.95-96.) This argument fails for multiple reasons. First, it ignores the fact that prior acts do not have to be identical to the charged acts to be admitted; all that is required is that they be substantially similar. *United States v. Jenkins*, 871 F.2d 598, 604 (6th Cir. 1989). Additionally, such an argument here ignores the facts of the two cases. In 2017, law enforcement learned

that Trotter had been in a vehicle shortly after a shooting incident. At the time, Trotter had been within arm's length of a 9mm handgun concealed inside the vehicle's glove compartment. When questioned about the gun, Trotter ultimately admitted that his fingerprints would be on the gun and also admitted to possessing it. Similarly, here, Trotter was in a blue Chevy Cruze shortly before and after a shooting incident. At the time, he was armed with a 9mm handgun.

Trotter also argues that his 2018 conviction is "too old" to be probative here. (R.46: Def. Mtn. to Preclude 404(b) Evid., PageID.96-97.) In support of this argument, Trotter cites the unpublished opinion in *United States v. Snyder*, 789 F. App'x 501, 506 (6th Cir. 2019), a case in which the government sought to introduce evidence of a defendant's failure to pay *personal* taxes "for many years" at a trial in which the defendant was charged with employment tax and embezzlement crimes. Trotter's argument about timing here fails. "There is no absolute maximum number of years that may separate a prior act and the offense charged" for the prior act to be admissible pursuant to Rule 404(b). *United States v. Ismail*, 756 F.2d 1253, 1260 (6th Cir. 1985). A gap of several years between the prior act and the present indictment is not, therefore, dispositive, particularly where the acts are similar in nature. Here, Trotter illegally possessed a 9mm handgun inside a vehicle on December 28, 2017. He later pled guilty to carrying a concealed weapon. Then, just over two years later, on February 4, 2020, he was again in illegal possession of a 9mm handgun inside a vehicle.

B.  Trotter's Possession of a Loaded 9mm Handgun in November 2020

Trotter's illegal possession of a loaded 9mm handgun inside a vehicle in November 2020 is likewise properly admitted in the trial of this matter. The analysis regarding admissibility is largely the same as outlined above regarding Trotter's 2018 conviction. First, there is sufficient evidence to establish that Trotter illegally possessed a loaded 9mm handgun in November 2020. On that date, he was found in a vehicle with the gun pushed up under the seat in front of him with the handle positioned so he could easily grab it. Forensic analysis of the gun found Trotter's DNA on the gun as well. This is more than sufficient evidence to establish that this prior act occurred. *See United States v. Mack*, 729 F.3d 594, 602 (6th Cir. 2013) (citing *Huddleston v. United States*, 485 U.S. 681, 689 (1988)) (declaring that "[t]he prosecution is not required to prove by a preponderance of the evidence that a prior bad act occurred" in order to introduce it pursuant to Rule 404(b)).

Second, as outlined above, the evidence from the November 2020 incident is being offered for proper purposes under Rule 404(b) – namely, as evidence of Trotter's modus operandi and also to establish identity. Finally, any potential prejudice to Trotter in presenting the November incident can be handled by a limiting instruction ensuring that the jury considers the evidence only for the limited purposes for which it is admitted. As courts have almost universally acknowledged, juries are presumed to follow a trial court's instructions. *See e.g.*, *Washington v. Hofbauer*, 228 F.3d 689, 706 (6th Cir. 2000) (citing *United States v. Richardson*, 481 U.S. 200, 211 (1987)).

In moving the Court to preclude the United States from using this incident at trial, however, Trotter ignores the similarities in the two cases and argues instead that the stop of the vehicle in which he was a passenger was an improper seizure.[3] This argument, too, should be rejected by this Court.

In the Sixth Circuit, there are "two separate tests to determine the constitutional validity of vehicle stops: an officer must have probable cause to make a stop for a civil infraction and reasonable suspicion of an ongoing crime to make a stop for a criminal violation." *United States v. Collazo*, 818 F.3d 247, 253-54 (6th Cir. 2016). "'Reasonable suspicion' is an abstract concept [that] 'requires more than a mere hunch but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard.'" *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008) (quoting *Smoak v. Hall*, 460 F.3d 768, 778-79 (6th Cir. 2006)). "When an officer has 'reasonable suspicion' that criminal activity may be afoot, the officer may conduct a limited seizure and briefly detain a person for investigative purposes." *Dorsey*, 517 F.3d at 395 (citing *Terry v. Ohio*, 392 U.S. 1, 30-31 (1968).

Information provided by a tipster or other informant may be sufficient to establish reasonable suspicion. In assessing whether a tip establishes reasonable suspicion, the Court should apply a totality of the circumstances test. *Alabama v.*

---

3 In support of his argument, Trotter cites state court cases, claiming that they, rather than the federal cases cited herein, govern the propriety of the traffic stop and subsequent encounter with Trotter in November 2020. (R.46: Mtn. to Preclude 404(b) Evid., PageID.98.)

*White*, 496 U.S. 325, 328 (1990) (citing *Illinois v. Gates*, 462 U.S. 213 (1983)). The Court should also look to the same factors considered critical under earlier Supreme Court precedent – namely an informant's veracity, reliability, and basis of knowledge – "although allowance must be made in applying them for the lesser showing required to meet that standard" of reasonable suspicion. *Id*. at 328-29 (citing *Aguilar v. Texas*, 378 U.S. 108 (1964); *Spinelli v. United States*, 393 U.S. 410 (1969)).

"Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *White*, 496 U.S. at 330. For example, in *Adams v. Williams,* 407 U.S. 143 (1972), the Court sustained a *Terry* stop and frisk after officers received a tip given in person by a known informant who had provided information in the past.

Here, investigators likewise had reasonable suspicion to conduct a limited seizure of the vehicle in which Trotter was a passenger. Specifically, officers had received information from a known and reliable informant that three black males were in possession of guns and drugs while riding in a black SUV with a California license plate. The informant also provided law enforcement specific, detailed information about where the SUV was located. Officers then responded to the area and conducted independent police work, including surveillance during which they corroborated several of the informant's facts. Specifically, officers verified the relative

location of the vehicle, its color, and its California license plates. It was only then that officers seized the vehicle, which led to them finding Trotter in the backseat within arm's length of a 9mm handgun that was loaded with one round in the chamber. In light of these facts, there was nothing improper about officers' brief seizure of Trotter and the vehicle in which he was riding in November 2020 and any such argument should not be countenanced by the Court.

C. Evidence from Trotter's Phones and Facebook Account

Trotter's next argument is that the Court should preclude the government from offering evidence from his phones and Facebook account, specifically photographs and videos of distinctive handguns similar to that used in the shooting here. Again, Trotter's argument fails. The firearm evidence recovered from Trotter's cell phones and Facebook account is admissible both as direct or circumstantial evidence that Trotter was the shooter, and under Federal Rules of Evidence 404(b) for the non-propensity purposes of proving Trotter's identity as the shooter and his opportunity and intent to commit the crimes charged.

By pleading not guilty in this case, Trotter has put his identity and his intent as the shooter at issue. The firearms in Trotter's pictures are of a similar character to the firearm used in the shooting.[4] *Compare* Ex. 1 with Exs. 2-8. Several, in fact, bear almost identical color markings to the gun that appears to have been involved

---

4 Of note, the electronic evidence in this case also includes numerous images of Trotter in possession of firearms other than handguns. The United States is not seeking to introduce these items pursuant to Rule 404(b) as they are not similar to the gun used to shoot at TFO Ferden.

here. These pictures provide a link between Trotter and the weapon used in this case, and they are, therefore, probative of his identity as the shooter. In addition, by showing that Trotter had access to and familiarity with such firearms, the pictures demonstrate Trotter's opportunity to commit the crimes here. Indeed, at the trial of the defendant in *United States v. Holmes*, the Sixth Circuit held that Facebook photographs showing firearms similar to the firearms used in three separate robberies were properly admitted, and the court noted that the similarity between the firearms indicated that the photographs had "even greater probative value." 797 F. App'x 912, 915 (6th Cir. 2019). The fact that Trotter has multiple photographs and videos of himself possessing and discharging guns similar to that used in the shooting is highly probative of identity, opportunity, and intent and should be admitted.

In support of his motion, Trotter cites *United States v. Jenkins*, 345 F.3d 928 (6th Cir. 2013), for the proposition that admitting the phone and Facebook evidence here would be akin to admitting evidence of a defendant's prior drug *use* to demonstrate his or her intent to distribute drugs on a later date. (R. R.46: Def. Mtn. to Preclude 404(b) Evid., PageID.102.) But he misses the point. The government does not seek to introduce the photos to show that, just because Trotter possessed some firearms at some point, he had an intent to commit the crimes in this case.[5] Instead, Trotter's possession and firing of firearms *similar* to the description of the firearm used in this shooting link him to the crimes and make it more likely that he is the

---

5 Again, the United States is not seeking to introduce evidence of Trotter's possession of assault rifles and long guns, though that evidence, too, exists on his phones and in his Facebook account.

18

shooter (and had both the intent and the opportunity to be). In addition, Trotter did not merely possess the firearms in his pictures and videos; he also actively discharged the firearms, pointed them at the camera, and otherwise employed them in manners similar to that employed in the instant case. Trotter's reliance on *Jenkins*, therefore, is misplaced. For all of these reasons, the evidence taken from Trotter's phones and Facebook page should be admitted here.

D. <u>Evidence of Trotter Wearing Tan Carhartt Jacket</u>

Trotter's final argument, submitted in a second motion to preclude evidence offered pursuant to Rule 404(b), is that the United States should be prohibited from offering evidence of his wearing clothing nearly identical to the shooter on dates prior to the shooting itself, as it, too, allegedly constitutes improper character evidence under Rule 404(b).[6] (R.50: Second Def. Mtn. to Preclude 404(b) Evid., PageID.154.) Again, Trotter's argument fails. Like his gun pictures, videos showing him wearing a distinctive jacket that matches the description of the shooter's outfit is admissible both as direct or circumstantial evidence that Trotter was the shooter, and, alternatively, under FRE 404(b) for the non-propensity purpose of proving Trotter's identity as the shooter – something Trotter himself has put at issue in this case. While prejudicial, the evidence is not unfairly so. The requisite analysis – whether framed

---

6 The United States initially indicated to Trotter's counsel its position that the evidence of similar clothing did not necessarily constitute 404(b) evidence but was, instead, direct evidence against Trotter. While that position has not changed, the United States submits an analysis under Rule 404(b) here in response to Trotter's motion.

in terms of direct or circumstantial evidence or under Rule 404(b) – weighs heavily in favor of admitting the evidence here.

Specifically, the clothing evidence at issue comes from two separate videos uploaded to Trotter's Facebook account in the weeks immediately preceding the shooting. Trotter uploaded the first video to his account on December 21, 2019. He then uploaded the second video a few days later, on January 3, 2020. Both videos show Trotter in a black hoodie and a tan Carhartt-type jacket substantially similar if not identical to the one worn by the shooter. *See* Exs. 9 & 10 (still shots taken from videos). One of the videos also shows Trotter riding in a vehicle with his co-defendant in this case – Gregory Rogers. These videos are, therefore, extremely probative of the issue of identity given their similarities to the shooting and their close proximity to the timing of the shooting.

Trotter argues to the contrary, but in doing so, he omits cases in which Facebook or other electronic evidence showing a defendant wearing the same or similar clothing as the person who committed the crime was properly admitted. *See e.g.*, *Holmes*, 797 F. App'x at 914; *see also United States v. Pearson*, 746 F. App'x 522 (6th Cir. 2018). Trotter also underestimates the uniqueness of the tan Carhartt-style jacket, describing it merely as a generic brown jacket. To the contrary, a Carhartt jacket is a distinctive type of tan jacket, which is why it is identified as a specific style. The reality is that the evidence here satisfies the analysis outlined by the Sixth Circuit in *Allen* – there is sufficient evidence that the prior acts occurred, given that the videos are of Trotter himself and were uploaded to a Facebook account in his

name; they are being offered to establish Trotter's identity, which is a proper purpose under Rule 404(b); and their probative value substantially outweighs any danger of unfair prejudice given their close proximity to the date of the shooting and the substantial similarity between the clothing in the videos and the clothing worn by the shooter.

### E. Proposed Evidence is Directly Relevant to Disprove Trotter's Own Self-Serving & Implausible Statements

Finally, all of the firearms evidence discussed herein is ultimately admissible to discredit Trotter's false exculpatory statements to police in the immediate aftermath of the shooting. When interviewed, Trotter lied about where he was at the time of the shooting and deliberately attempted to distance himself from any association with firearms, telling officers "I am not the type of guy to be around guns, I have had a gun case." The reality, though, is starkly different. Trotter is routinely around guns, possessing them, shooting them, and posting photos and videos of his possession on social media. The fact that Trotter lied to police about his involvement with guns is evidence of his consciousness of guilt and is, therefore, relevant for the jury's consideration here.

FRE 801(d)(2) provides that an opposing party's statement is not considered hearsay and is, therefore, admissible against the party who made it. The rule is not limited to admissions but refers to all statements, both inculpatory and exculpatory. *See e.g.*, *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) ("We note that the admissibility of a statement under Rule 801(d)(2) does not hinge . . . on whether or not the statement is against the party-declarant's interest."); *United States v.*

*Turner*, 995 F.2d 1357, 1363 (6th Cir. 1993) ("On its face, Rule 801(d)(2) does not limit an admission to a statement against interest."); *United States v. Thurman*, 915 F.Supp.2d 836 (W.D. Ky 2013). However, the rule "does not extend to a party's attempt to introduce his or her *own* statements through the testimony of other witnesses." *McDaniel*, 398 F.3d at 545.

The Sixth Circuit recognizes defendants' flight, concealment of evidence, and implausible stories as evidence which allows an inference of guilty knowledge. *See United States v. Jackson*, 55 F.3d 1219, 1226 (6th Cir. 1995). Specifically, "[f]alse exculpatory statements are . . . recognized as evidence from which the jury may infer consciousness of guilt." *See* Sixth Cir. Pattern Inst. 7.14, Commentary (citing *Stanley v. United States*, 245 F.2d 427 (6th Cir. 1957); *United States v. Tedesco*, 1996 WL 690152 at 2 (6th Cir. 1996) (unpublished).; *Cf. United States v. McDougald*, 990 F.2d 259, 262-63 (6th Cir. 1993) (describing defendant's false exculpatory statements as "of little value" in establishing guilty knowledge at relevant time because statements were made eight months after the crime when he was questioned by police; conviction reversed for insufficient evidence)).

Here, Trotter made multiple false exculpatory statements, including statements that he did not associate with guns. His statements are demonstrably false and relevant for the jury's consideration here. Far from not being the type to be around guns, Trotter is consistently around guns, many of them handguns similar to that used in the shooting here. His Facebook page and his phones are replete with photographs and videos of Trotter possessing and discharging handguns within

22

months of the shooting here. These facts should be admitted here as direct evidence to disprove Trotter's own false exculpatory statements.

## **CONCLUSION**

At trial, the government seeks to introduce firearms evidence, including evidence related to Trotter's multiple instances of possessing a loaded 9mm handgun in a vehicle and evidence from his phones and Facebook account showing him in possession of and discharging handguns similar to that used in the shooting here. The government likewise seeks to introduce evidence of Trotter wearing clothing similar to the shooter here within weeks of the shooting itself. All of the proposed evidence is being offered not as propensity evidence but for proper purposes under FRE 404(b). The evidence is probative of issues Trotter himself has contested, is highly relevant to his guilt in this matter, and is not unfairly prejudicial. For these and all of the additional reasons discussed herein, Trotter's motions to preclude should, therefore, be denied.

ANDREW BYERLY BIRGE
United States Attorney

Date: August 30, 2021
/s/ Stephanie M. Carowan
STEPHANIE M. CAROWAN
Assistant United States Attorney
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404
Stephanie.Carowan@usdoj.gov