**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

Kelly L. Stephens
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: April 10, 2024

Ms. Stephanie M. Carowan
Office of the U.S. Attorney
Department of Justice
P.O. Box 208
Grand Rapids, MI 49501

Mr. Jeremy C Marwell
Vinson & Elkins
2200 Pennsylvania Avenue, N.W.
Suite 500 W.
Washington, DC 20037

Re:  Case Nos. 22-1432/22-1433, *USA v. Gregory Rogers*
Originating Case No. : 1:20-cr-00053-1

Dear Counsel,

The court today announced its decision in the above-styled cases.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Kelly L. Stephens, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Ms. Ann E. Filkins

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0080p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

GREGORY ROGERS,

*Defendant-Appellant*.

Nos. 22-1432/1433

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:20-cr-00053-1—Hala Y. Jarbou, District Judge.

Argued: December 5, 2023

Decided and Filed: April 10, 2024

Before: McKEAGUE, STRANCH, and NALBANDIAN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Jacob C. Beach, VINSON & ELKINS LLP, Washington, D.C., for Appellant. Stephanie M. Carowan, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Jacob C. Beach, Jeremy C. Marwell, VINSON & ELKINS LLP, Washington, D.C., for Appellant. Stephanie M. Carowan, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee in 22-1432 only.

NALBANDIAN, J., delivered the opinion of the court in which McKEAGUE, J., joined. STRANCH, J. (pp. 8–16), delivered a separate dissenting opinion.

## OPINION

NALBANDIAN, Circuit Judge. A jury convicted Gregory Rogers of various drug and firearm related crimes—six counts in total. He challenges all six convictions, claiming that key evidence collected from his girlfriend's car violated his Fourth Amendment rights. Because we agree with the trial court that Rogers had no legitimate expectation of privacy in the vehicle, we AFFIRM.

### I.

On January 27, 2020, officers from the Grand Rapids Police Department responded to a reported domestic assault in Grand Rapids. Upon arrival, Officer Peter Thompson was told that the suspected assailant had fled south. To the south, he saw a running Chevy Cruze parked by the road. Officer Kenneth Nawrocki checked to see if the assailant was inside. Instead of the assailant, Officer Nawrocki found Rogers alone in the passenger seat without a driver's license. When asked, Rogers explained that the car belonged to his girlfriend who was nearby and emphasized that he "wasn't even driving."

Officer Nawrocki checked Rogers's identity in a database, discovering that he had an outstanding felony warrant for carrying a concealed weapon. He then arrested Rogers, finding car keys and $785 in cash on him. After confirming that Rogers's girlfriend was the car's sole registered owner and seeing she was nowhere to be found,[1] Officer Nawrocki decided to impound the Chevy Cruze and conduct an inventory search. He found two digital scales, plastic baggies, a large bag of marijuana, and a loaded pistol. Two days later, Rogers's girlfriend called the police to report that "she [had] let [Rogers] use her car on the day of the incident while she was at work and school." R. 22-1, Mot. to Suppress, Attach. A, p. 10, PageID 79.

---

[1] Evidence at trial revealed that Rogers's girlfriend was at work during the January 2020 arrest, not nearby, as Rogers had told officers on the scene.

In April 2020, the United States charged Rogers with possession of marijuana with intent to distribute, possession of a firearm in furtherance of a drug trafficking crime, and being a felon in possession of a firearm, and issued an arrest warrant. A few days later, investigators found Rogers in the same Chevy Cruze. Arresting him again, the investigators found a loaded pistol with an obliterated serial number, as well as 2.5 ounces of marijuana, more plastic baggies, a digital scale, and a cutting tray.

Ultimately, Rogers was indicted on two counts each of possession of marijuana with intent to distribute, possession of a firearm in furtherance of a drug trafficking offense, and being a felon in possession of a firearm—one count for each arrest in January and April. Rogers pleaded not guilty and moved to suppress the fruits of his January arrest. The trial court held an evidentiary hearing on the motion where both Officers Thompson and Nawrocki testified. Rogers submitted a police report showing that he had permission to use the Chevy Cruze on January 27, 2020, but he otherwise presented no evidence at the hearing.

After the hearing, the district court denied the motion to suppress. The court held that Rogers lacked Fourth Amendment "standing" to object to the search because he lacked a legitimate expectation of privacy in the interior of the vehicle. Rogers was neither the owner nor the driver of the car and failed to show that he had permission to occupy it. The court also determined, in the alternative, that the search was a valid inventory search.

After trial, a jury convicted Rogers on all six counts. Rogers timely appealed, arguing (1) that he had a reasonable expectation of privacy in the Chevy Cruze, which the police violated in the January arrest, and (2) that the April arrest was a fruit of that poisonous tree.

## II.

With suppression motions, we review factual findings for clear error and legal conclusions de novo. *United States v. Lattner*, 385 F.3d 947, 952 (6th Cir. 2004). Factual findings are clearly erroneous when the record leaves the reviewing court "with the definite and firm conviction that a mistake has been committed." *United States v. Shank*, 543 F.3d 309, 312 (6th Cir. 2008) (citation omitted). A "denial of a motion to suppress will be affirmed on appeal if the district court's conclusion can be justified for any reason." *United States v. Moorehead*,

912 F.3d 963, 966 (6th Cir. 2019) (citation omitted).  And we review the evidence "in the light most likely to support the district court's [denial]." *Id.* (citation omitted).

To establish that police violated his Fourth Amendment rights, Rogers must show that he had "a 'legitimate expectation of privacy'" in his girlfriend's car. *Hicks v. Scott*, 958 F.3d 421, 431 (6th Cir. 2020) (quoting *Rakas v. Illinois*, 439 U.S. 128, 144 (1978)).  A legitimate expectation of privacy comes in two parts.  First, Rogers "must have exhibited an actual (subjective) expectation of privacy." *Id.* (internal quotation marks omitted).  Second, "that expectation must also be one that society is prepared to recognize as reasonable." *Id.* (internal quotation marks omitted).

We recognize expectations of privacy "on a case-by-case basis," considering among other factors the defendant's "proprietary or possessory interest in the place to be searched," his "right to exclude others," and "whether he was legitimately on the premises." *United States v. King*, 227 F.3d 732, 744 (6th Cir. 2000).  But Rogers must assert that *his own* Fourth Amendment rights were infringed. *Rakas*, 439 U.S. at 133–34.  Fourth Amendment rights "may not be vicariously asserted." *Id.* (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)).

Rogers failed to meet his "burden of establishing his standing" to challenge the search, *United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001), because he never exhibited a subjective expectation of privacy.  He was neither owner nor driver of the vehicle.  Police found Rogers—without a driver's license—in the passenger seat of his girlfriend's car.  And he never showed he had "complete dominion and control" over the car. *Rakas*, 439 U.S. at 149 (distinguishing *Jones v. United States*, 362 U.S. 257, 259 (1960)).

Now, this Court has recognized a passenger's legitimate expectation of privacy when both he and the driver "had participated in borrowing the car from its owner" and when both people "hav[e] joint access or control for most purposes." *United States v. Dunson*, 940 F.2d 989, 994–95 (6th Cir. 1991) (quoting *United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974)).  But to establish Fourth Amendment "standing" to challenge a vehicle search, one must "exhibit a legitimate expectation of privacy in the car *at the time of the search*." *United States v. Rucker*, No. 91–5863, 1992 WL 24904, at *1 (6th Cir. Feb. 12, 1992) (emphasis added) (citing *United*

*States v. Knox*, F.2d 285, 293–94 (6th Cir. 1988)).  And a subjective expectation of privacy is established by one's conduct.  *Smith v. Maryland*, 442 U.S. 735, 740 (1979).  Accordingly, by your "actions and vigorous oral disclaimers" you may fail to exhibit any subjective expectation. *United States v. Tolbert*, 692 F.2d 1041, 1045 (6th Cir. 1982).

In *Tolbert*, we found that the defendant could not assert a subjective expectation of privacy in her luggage because "she specifically disclaimed ownership thereof."  *Id.*  Here, not only did Rogers twice accurately inform the police that the Chevy Cruze was not his when asked, but he also had no ID and loudly disclaimed his authority over the vehicle, repeating to the officers that he "wasn't even driving," when no officer had inquired either time.  His failure to exhibit an expectation of privacy at the time of the search prevents him from asserting one now to challenge that search in court.

Although the Supreme Court in *Byrd v. United States* recognized a driver's Fourth Amendment privacy interest when borrowing someone else's rental car, 584 U.S. 395, 398–99 (2018), that is not this case.  Both Byrd and Rogers had permission to occupy the relevant vehicles, but unlike Byrd, Rogers never exhibited "complete dominion and control over" his girlfriend's Chevy Cruze.  *See Rakas*, 439 U.S. at 149.  Both were alone in the vehicle when confronted by police, but Byrd was driving, *Byrd*, 584 U.S. at 400, and Rogers was sitting in the passenger seat, ostensibly waiting for his girlfriend to return from a quick trip into a neighbor's house up the street.  And there is no suggestion that Byrd ever affirmatively disclaimed dominion and control over the car like Rogers did.  *See id.*  Rogers made it clear to the officers on the scene multiple times that he was not the driver, Byrd did not.

Thus, Rogers cannot establish that police violated his Fourth Amendment rights.  He had no legitimate expectation of privacy because he exhibited no subjective expectation of privacy in his girlfriend's car.

Rogers further contends that his argument is supported by what the government argued at trial.  He claims the "prosecution's entire theory of guilt at trial turned on the assertion that [he] had possession and control of the vehicle," which he claims "is facially incompatible with its earlier assertion . . . that [he] lacked control over, or any other possessory interest in, the car."

Appellant Br. at 16, 18. But Rogers never renewed his motion to suppress, so the trial record is unavailable in our review. *United States v. Thomas*, 875 F.2d 559, 562 n.2 (6th Cir. 1989) ("Unless the district court is given an opportunity to correct the error, an appellate court cannot review evidence presented at trial which casts doubt upon a pre-trial suppression motion.").

In any event, when Rogers contends that "[t]he sheer volume of Government evidence at trial to support a theory of constructive possession eviscerates the district court's suppression ruling, under any standard of review," Reply Br. at 6, he conflates two distinct concepts. Constructive possession of evidence found inside the car relies on immediate control over the premises. *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009). This differs from a legitimate expectation of privacy, which relies on *rightful* dominion. *Rakas*, 439 U.S. at 149.

For example, in *United States v. Salvucci*, the Supreme Court rejected the argument that defendants are "entitled to claim 'automatic standing' to challenge the legality of a search" when "charged with crimes of possession." 448 U.S. 83, 84–85 (1980). Instead, the Court clarified "that a prosecutor may, with legal consistency and legitimacy, assert that a defendant charged with possession of a seized item did not have a privacy interest violated in the course of the search and seizure." *Id.* at 88–89; *see also United States v. Patton*, 292 F. App'x 159, 166 (3d Cir. 2008) ("The legal test for standing to challenge a search and seizure differs from the test for showing constructive possession."). This is essentially the trial-based argument that Rogers makes now.

Rogers also cites the fact he was alone "in the same car when he was arrested in April 2020" to prove he had a privacy interest. Appellant Br. at 19. But sitting in the driver's seat in April does not mean Rogers had a legitimate expectation of privacy while he occupied the passenger seat without a driver's license back in January.

Although Rogers showed that, as it turned out, he had permission to use his girlfriend's car, he did not establish at the time of the search that he had a legitimate expectation of privacy. Therefore, the district court correctly denied his motion to suppress.

### III.

For the reasons set forth above, we AFFIRM Rogers's conviction.[2]

---

[2]Rogers initially filed Notices of Appeals in two separate cases, which we consolidated here. But Rogers's opening brief raised no issues related to the second case, No. 22-1433, where he had pleaded guilty to aiding and abetting in an assault on a federal law enforcement officer using a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 2, 111(a), (b). Therefore, we AFFIRM this conviction as well.

---

### DISSENT

---

JANE B. STRANCH, Circuit Judge, dissenting. On January 27, 2020, Gregory Rogers borrowed his girlfriend's car as he "often" did. While parked and sitting in the passenger seat of that car, he was approached by officers responding to an incident elsewhere on the block. The officers ran a database search of Rogers's name, learned that he had an outstanding warrant, and arrested him. They then decided to impound the vehicle and conduct an inventory search, which turned up contraband for which Rogers was later charged. The impoundment decision and corresponding search were conducted not based on probable cause or pursuant to a warrant, but under the community caretaking exception to the Fourth Amendment's warrant requirement. Yet the Government on appeal offers no legitimate community caretaking rationale to justify impounding the vehicle, which was legally and safely parked on a residential road in line with other identically parked cars. And our precedent makes clear that a person who borrows a vehicle and stores "personal belongings" in it, as Rogers did here, has "a legitimate expectation of privacy in the car and its contents" whether they are driver or passenger. *United States v. Dunson*, 940 F.2d 989, 994-95 (6th Cir. 1991), *abrogated on other grounds by United States v. Ferguson*, 8 F.3d 385 (6th Cir. 1993). I would therefore conclude that impounding and searching the vehicle violated Rogers's Fourth Amendment rights and would reverse the district court's denial of his motion to suppress. I respectfully **DISSENT.**

### I. Analysis

The Fourth Amendment prohibits "unreasonable searches and seizures." *Caniglia v. Strom*, 593 U.S. 194, 198 (2021) (quoting U.S. Const. amend. IV). A defendant moving to suppress evidence under the Fourth Amendment must show that he experienced an unreasonable search or seizure that violated his "legitimate expectation of privacy." *See United States v. King*, 227 F.3d 732, 743 (6th Cir. 2000). My colleagues conclude that Rogers could not legitimately expect privacy in the vehicle he borrowed from his girlfriend and affirm the district court on that

basis alone.  I explain my disagreement below, beginning with Rogers's legitimate expectation of privacy and then addressing the unreasonableness of impounding and searching the vehicle.

### A.     Legitimate Expectation of Privacy

A defendant moving to suppress the products of a search carries a threshold burden of showing "a legitimate expectation of privacy in the place searched or the thing seized." *King*, 227 F.3d at 743.  A legitimate expectation of privacy exists if (1) the defendant exhibited a subjective expectation of privacy in the place searched that (2) "society is prepared to recognize as" objectively reasonable.  *Id.* (quoting *Bond v. United States*, 529 U.S. 334, 338 (2000)).

At the first step of the analysis, we ask whether the defendant has demonstrated an effort "to preserve something as private." *United States v. Mathis*, 738 F.3d 719, 729 (6th Cir. 2013) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).  This inquiry turns on whether the defendant's actions manifest an actual expectation of privacy in the place searched.  *Id.* at 729-30.  At the second step of the analysis, we ask whether the defendant's subjective expectation of privacy was objectively reasonable.  *See id.* at 729.  This question is resolved "either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Byrd v. United States*, 584 U.S. 395, 405 (2018) (quoting *Rakas v. Illinois*, 439 U.S. 128, 144 n.12 (1978)).

Our precedent recognizes that one who borrows a vehicle and stores "personal belongings" in it has "a legitimate expectation of privacy in the car and its contents"—whether that person is driver or passenger.  *Dunson*, 940 F.2d at 994-95.  In *Dunson*, officers patrolling for drug runners on Interstate 75 stopped a car, asked for permission to search it, and obtained a signed consent form from the driver.  *Id.* at 991-93.  The search revealed seven kilograms of cocaine stored in a duffel bag in the vehicle's trunk alongside the occupants' luggage and resulted in drug trafficking charges for both men.  *Id.* at 990, 993.  When they moved to suppress the fruits of the search, we concluded they both "had a legitimate expectation of privacy" to support the challenge.  *Id.* at 995.  *Dunson* maps on to Rogers's case.

As for the subjective prong, Rogers, too, borrowed a car and was storing personal belongings in it, conduct *Dunson* explained bespeaks a subjective expectation of privacy.  *Id.* at

994-95; *see King*, 227 F.3d at 744 (collecting cases holding that defendants exhibit a subjective expectation of privacy in the places they hide contraband). Rogers also chose a vehicle with tinted windows, rolled his window down only a crack when officers engaged him, sought permission to exit the car when officers asked to "check" him, and rolled his window back up before stepping out of the car. These measures to preserve privacy in the vehicle's interior exceed any efforts taken by the defendants in *Dunson*, who left belongings in areas that were visible from outside the car, took no apparent steps to shield the car's interior during the stop, and ultimately consented to a search of the vehicle. *See Dunson*, 940 F.2d at 991-93.

As for the objective prong, Rogers was arrested in a car that he had permission to borrow, an arrangement we held in *Dunson* was sufficient to confer a reasonable expectation of privacy on the borrower. *Id.* at 994-95. And Rogers used the car, which belonged to his girlfriend, "often." The regularity with which Rogers used the vehicle, and the close personal relationship between Rogers and its owner, further bolster the reasonableness of Rogers's expectation of privacy in it. *See United States v. Montalvo-Flores*, 81 F.4th 339, 343-44 (3d Cir. 2023) (stressing that defendant's possession of his "girlfriend's" car, "not a stranger's," "matters"). Again, this makes the strength of Rogers's interest even stronger than that of the defendants in *Dunson*, who borrowed the car from an unspecified "friend" without any indication they did so regularly. *Dunson*, 940 F.2d at 992.

On both the subjective and objective prongs, Rogers had a stronger privacy interest than the defendants in *Dunson*. He therefore had a legitimate expectation of privacy in the vehicle—a conclusion the majority opinion does not seriously dispute. Instead, the majority concludes that whatever expectation of privacy Rogers may have had in his girlfriend's car generally, he disclaimed in this instance specifically, a result it grounds in our decision in *United States v. Tolbert*, 692 F.2d 1041 (6th Cir. 1982).

The defendant in *Tolbert*, Delphine Tolbert, transported cocaine in her checked luggage on a commercial airline flight. *See Tolbert*, 692 F.2d at 1043-44. Upon reaching her destination, Tolbert realized she was under law enforcement surveillance, skipped baggage claim, and rushed outside to hail a cab where she was intercepted by federal agents. *See id.* at 1043. The agents asked Tolbert about her bag and she repeatedly "denied having any luggage." *See id.* at 1043-44.

The agents recovered a key from Tolbert's purse, however, and used it to successfully open the suitcase Tolbert had left at baggage claim, discovering distribution levels of cocaine inside. *See id.* at 1044. She was arrested and charged with drug trafficking. *See id.* at 1042.

When Tolbert's motion to suppress reached us, we explained that a person who abandons their luggage surrenders whatever expectation of privacy they may previously have had in it. *See id.* at 1044-45. Tolbert's "actions" (attempting to leave the airport without her luggage) coupled with her "vigorous oral disclaimers" (repeatedly denying she had luggage) "affirmatively indicated that she had no interest in preserving the secrecy of the contents of the suitcase." *Id.* at 1045. We held that Tolbert had abandoned her legitimate expectation of privacy in the suitcase. *Id.*

The majority opinion relies on three facts to equate Rogers's situation with Tolbert's: "Rogers twice accurately inform[ed] the police that the Chevy Cruze was not his when asked"; "repeat[ed] to the officers that he 'wasn't even driving'"; and "had no ID." Maj. Op. at 5.

The opinion first latches on to Rogers's statements that the vehicle "was not his." These statements cannot have disclaimed Rogers's privacy interest in the car, however, because *Dunson* makes clear that a legitimate expectation of privacy attaches to borrowed vehicles. *Dunson*, 940 F.2d at 994-95. Rogers could not have forfeited his legitimate expectation of privacy in the car he "often" borrowed from his girlfriend by honestly communicating the arrangement to law enforcement.

The majority next emphasizes Rogers's statements that he "wasn't even driving." This, too, is legally irrelevant under *Dunson* because passengers retain a legitimate expectation of privacy in borrowed vehicles. *See Dunson*, 940 F.2d at 994-95. Rogers's statements that he had not been driving, and his presence in the passenger seat, are perfectly consistent with the privacy interest that accrues to automobile passengers. He cannot have abandoned that interest by conveying his status as a passenger when "a passenger lawfully in an automobile" retains "an expectation of privacy in" that vehicle. *Byrd*, 584 U.S. at 406 (quoting *Rakas*, 439 U.S. at 149 n.17).

Rogers's statements about driving are also taken out of context in the majority opinion. Rogers protested that he "wasn't even driving" only after he had been handcuffed and was being led away to a police cruiser. He appears to have made the statement in response to an onlooker asking why he was being arrested, to which he answered, "I don't know, I wasn't even driving." The officers responded by clarifying that he was not "getting jammed up for driving." So even if we assume that disclaiming driving could in some circumstances contribute to the conclusion that a passenger was abandoning his privacy interest in a vehicle, that could not be the case here where the statements were post-arrest exclamations evincing nothing more than the uncharged arrestee's confusion about his detention.

The majority opinion's final point is that Rogers failed to produce a driver's license. But it is unclear what legal significance the majority draws from this fact either. If it takes it as reinforcing Rogers's status as a passenger, *Dunson* again refutes the point; if it takes it as evidence that Rogers committed a traffic violation, it does not say what violation he committed by occupying the passenger seat of a parked car without a license, and in any event, it does not explain why such a violation would vitiate Rogers's otherwise legitimate expectation of privacy. *See Montalvo-Flores*, 81 F.4th at 345 n.10. It cannot be that Rogers had a legitimate expectation of privacy in the vehicle until he failed to produce a license when no Michigan law has been identified requiring him to possess one in the first place.

The majority opinion's fixation on three isolated details empty of the legal significance it ascribes to them also overlooks the bigger picture. Rogers occupied a vehicle with tinted windows, minimally cracked his window when officers approached, and requested permission to exit the vehicle before submitting to a consent search, rolling his window back up before stepping out of the car. The officers then immediately handcuffed Rogers and secured him in the back of a police vehicle, developments that prompted Rogers to speak out in protest. It is unclear from this chain of events how Rogers could have done more to exhibit an expectation of privacy in the vehicle short of resisting arrest.

All this takes Rogers's conduct worlds away from *Tolbert*. The legally significant conduct in *Tolbert* was the defendant's attempt to leave the airport without her luggage and her statements denying possession or control of the luggage. *Tolbert*, 692 F.2d at 1043-45 (Tolbert

was "apparently intent on departing the airport without her luggage" and "denied having any luggage"); *see Byrd*, 584 U.S. at 407 ("expectation of privacy . . . comes from lawful possession and control" of property). Rogers, by contrast, never willingly left the vehicle, separating from it only when he was arrested and taking steps to preserve his privacy throughout the encounter. He never denied possessing or controlling the car, simply explaining to officers when asked that it belonged to his girlfriend. The outcome in *Tolbert* followed from the unique combination of the defendant's "actions" (leaving her property) and "disclaimers" (denying possession of the property)—not the result of either "fact alone"—and each factor contributed to the court's conclusion that the property had been abandoned. *Tolbert*, 692 F.2d at 1044-45. Neither element is present in Rogers's case—much less both.

The Supreme Court has repeatedly stressed that "passengers" may have the "possession and control" of an automobile necessary to confer a legitimate expectation of privacy, a principle we have until now honored in cases such as *Dunson*. *Byrd*, 584 U.S. at 406-07. The majority opinion's analysis nevertheless turns largely on Rogers's role as a passenger—Rogers told officers "that he 'wasn't even driving,'" "Rogers was sitting in the passenger seat," Rogers made clear "that he was not the driver"—reasoning that is incompatible with controlling precedent. Maj. Op. at 5. I would conclude instead that Rogers had a reasonable expectation of privacy in the vehicle sufficient to maintain his Fourth Amendment claim.

**B.     Reasonableness of the Search and Seizure**

Because I would hold that Rogers had a legitimate expectation of privacy in the car, I would also assess whether impounding the vehicle without a warrant was consistent with the Fourth Amendment. The Government contends that it was under the community caretaking exception to the Fourth Amendment's warrant requirement.

The community caretaking exception enables law enforcement engaged in the course of duty to respond to the "special needs" of the community that are beyond the scope of "normal law enforcement." *United States v. Morgan*, 71 F.4th 540, 544 (6th Cir. 2023) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 873-74 (1987)). It applies "in narrow instances when public safety is at risk" and "delay is reasonably likely to result in injury or ongoing harm to the community at

large." *Taylor v. City of Saginaw*, 922 F.3d 328, 335 (6th Cir. 2019) (quoting *United States v. Washington*, 573 F.3d 279, 289 (6th Cir. 2009)). An officer's actions are covered only when they are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973).

A vehicle may be impounded under the community caretaking exception if it is "impeding traffic or threatening public safety and convenience." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). This includes removing incapacitated vehicles from the side of the highway, *Dombrowski*, 413 U.S. at 443; towing illegally parked vehicles interfering with "the efficient movement of vehicular traffic," *Opperman*, 428 U.S. at 369; and retrieving vehicles that would otherwise be abandoned in the private driveway of a third-party, *United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012).

The officers here arrested Rogers after removing him from a vehicle that was legally parked in line with other cars on a residential street. *See Opperman*, 428 U.S. at 375; *Jackson*, 682 F.3d at 455; *United States v. Kimes*, 246 F.3d 800, 804 (6th Cir. 2001). Bodycam footage shows the vehicle aligned with the roadside a few inches from the curb. *See Dombrowski*, 413 U.S. at 443; *United States v. Snoddy*, 976 F.3d 630, 636 (6th Cir. 2020); *United States v. Lilly*, 438 F. App'x 439, 443-44 (6th Cir. 2011). The sedan is positioned directly behind another identically parked vehicle on a street dotted with other cars parked in front of residential homes. And it is across the street from the home of a woman Rogers identified as his "cousin." In short, the video evidence shows a residential street appearing just as one would expect to find it on any other winter afternoon. An uninitiated bystander would be unable to reasonably identify any car "impeding traffic or threatening public safety and convenience"—much less to select as the culprit the vehicle at issue here. *See Opperman*, 428 U.S. at 369.

The Government nevertheless justifies impounding the car for two reasons: a risk prevention theory and a liability-limitation theory. It contends that leaving the car on the street would have "posed risks to the car itself" and created "liability for the city" because the vehicle was parked in a "more violent" neighborhood. Accepting this risk-prevention theory would license impoundment "any time" someone is arrested and taken into custody in a high crime neighborhood—even in the absence of any specific threat to the vehicle—a result that is flatly

"inconsistent" with law enforcement's role in "'caretaking' of the streets." *United States v. Duguay*, 93 F.3d 346, 353 (7th Cir. 1996). The car here was in "no different" a parking place "than any other vehicle" on the block, so "officers could no more impound" it "than they could impound any other vehicle" on the same street. *United States v. Venezia*, 995 F.3d 1170, 1182 (10th Cir. 2021). The liability-limitation theory, meanwhile, would create "new police obligations . . . where none existed before." *Duguay*, 93 F.3d at 352. "The police do not owe a duty to the general public to remove vulnerable automobiles from high-crime neighborhoods," and the Government fails to explain how a police department could be liable for leaving on the street a vehicle it lacked constitutional authority to remove. *Id.* at 352-53. "While protection of the arrestee's property and municipal liability are both valid reasons to conduct an inventory *after* a legal impoundment, they do not establish the *a priori* legitimacy of the seizure." *Id.* at 352 (first emphasis added). The risk-prevention theory proves too much; the liability-limitation theory proves too little.

But even accepting the premise that risks to a car and liability to a city can alone justify impoundment in some circumstances, the Government would still bear the burden of proving that such risk existed here. *See Taylor*, 922 F.3d at 334. That burden is particularly stringent when the Government relies only on the justification that the search or seizure was carried out in a high-crime area, because that explanation triggers "special concerns of racial, ethnic, and socioeconomic profiling." *United States v. Caruthers*, 458 F.3d 459, 467 (6th Cir. 2006), *abrogated on other grounds by Mathis v. United States*, 579 U.S. 500 (2016). A citation to "an area as 'high-crime'" must therefore be "factually based" and specific to "circumscribed locations where particular crimes occur with unusual regularity." *Id.* at 467-68 (quoting *United States v. Montero-Camargo*, 208 F.3d 1122, 1138 (9th Cir. 2000) (en banc)). Yet the Government here offers only the vague, unsubstantiated testimony of a single police officer characterizing the neighborhood in which Rogers was arrested as "more violent." The statement provides no factual basis for deeming the area "more violent," does not address the "particular crime" of vandalism itself, and is not limited to a "specific" location, apparently applying instead to "an entire neighborhood" if not more. *See id.* Such general and conclusory testimony cannot withstand the scrutiny with which the Government's "high-crime area" justifications must be met.

When duty calls, the community caretaking exception answers by permitting police officers to step outside their ordinary law enforcement function to respond to pressing public safety matters—just as "any private citizen might." *Caniglia*, 593 U.S. at 198 (quoting *Florida v. Jardines*, 569 U.S. 1, 8 (2013)). "But the Supreme Court and our court have been careful not to allow this historically grounded, and usually welcome, explanation for police work to overrun core Fourth Amendment protections." *Morgan*, 71 F.4th at 545. Community caretaking is "permitted when reasonable but only when reasonable." *Id.* at 546. Because the officers here impounded a car that was safely and legally parked on a residential street in line with other identically parked cars posing no threat to traffic or public safety, I would conclude that the impoundment—and subsequent search—were unreasonable and violated the Fourth Amendment.

## II. CONCLUSION

For these reasons, I respectfully **DISSENT**.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 22-1432/1433

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GREGORY ROGERS,

    Defendant - Appellant.

**FILED**
Apr 10, 2024
KELLY L. STEPHENS, Clerk

Before: McKEAGUE, STRANCH, and NALBANDIAN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED in its entirety.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens, Clerk